IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**NICHOLAS HAROLD HERNY,**

        Petitioner,

    v.                              CASE NO. 13-3118-RDR

**STATE OF KANSAS,**

        Respondent.

## MEMORANDUM AND ORDER

This petition for writ of habeas corpus was filed pursuant to 28 U.S.C. §§ 2241 and 2254 by a federal prisoner confined in the United States Penitentiary-Hazelton in West Virginia. Petitioner seeks to challenge state detainers based upon probation violations that have been lodged against him at the federal prison. The court finds that the petition fails to state a claim and gives Mr. Herny time to show cause why this action should not be dismissed as well as to satisfy the filing fee.

## FILING FEE NOT SATISFIED

The statutory fee for filing a habeas corpus petition is $5.00. Petitioner has neither paid the fee nor submitted a Motion to Proceed in forma pauperis. The latter motion must be upon court-provided forms and accompanied by a certified statement of the inmate's institutional account for the six-month period immediately preceding

1

the filing of the petition. Petitioner is given time to satisfy the filing fee in one of these two ways. If he fails to do so within the prescribed time, this action may be dismissed without further notice.

**ALLEGATIONS AND CLAIMS**

Mr. Herny's allegations in support of his petition indicate the following factual background. He was convicted of criminal offenses in Wyandotte County, Kansas in 2007, and in Johnson County, Kansas in 2008. He is currently serving a sentence of 240 months for convictions of federal offenses. Mr. Herny has "outstanding" probation violations in his two Kansas criminal cases, and authorities in the two counties have lodged detainers[1] at the federal prison based upon them. He previously submitted several requests to be brought to Kansas for resolution of the probation violations and the state detainers, but the State failed to respond. He complains that his "federal sentence is being affected by the outstanding detainers" in that he must remain in a higher custody prison and is not eligible for certain federal programs that would facilitate his return to the community such as "the 500/hr drug program and halfway/house." Petitioner asserts that he has a due

---

[1] "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." See *Carchman v. Nash*, 473 U.S. 716, 719 (1985)(citing Cuyler v. Adams, 449 U.S. 433, 436, FN3 (1981)(other citations omitted)).

2

process right to a prompt revocation hearing upon request that is being denied and cites *Morrissey v. Brewer*, 404 U.S. 471 (1972). The court is asked to direct the State of Kansas to "show cause why (he) should not be granted relief."

**DISCUSSION**

In *Morrissey v. Brewer* the U.S. Supreme Court held that the Due Process Clause requires that a parolee taken into custody for alleged violation of the conditions of parole be afforded an informal probable cause hearing "as promptly as convenient after arrest" and a more elaborate parole revocation hearing "within a reasonable time" thereafter. *Morrissey*, 408 U.S. at 485-89. In *Gagnon v. Scarpelli,* 411 U.S. 778 (1973) the Court held that the procedures required by *Morrissey* extend to probationers as well as to parolees. However, a different rule applies when a probation violator, like Mr. Herny, is serving an intervening sentence. The Tenth Circuit long ago held and continues to hold that a petitioner's right to a parole or probation revocation hearing does not attach until his intervening sentence has been completed and he has been taken into custody pursuant to the violator warrant, even when the warrant was issued several years earlier. See *Small v. Britton*, 500 F.2d 299, 301 (10th Cir. 1974);[2] *U.S. v. Romero*, 511 F.3d 1281, 1284 (10th Cir.

---

[2] In this appeal, a federal parolee claimed that the Parole Board's delay in affording him a revocation hearing until after completion of his intervening state sentence violated his right to due process under the Fifth Amendment. The Circuit

3

2008)("[T]here is no constitutional duty to provide prisoners an adversary parole hearing until they are taken into custody as parole violators," and "[b]ecause no warrant has been executed," petitioner "is not yet entitled to any of these procedural protections.")(citing *Moody v. Daggett*, 429 U.S. 78, 89 (1976); *Morrissey*, 408 U.S. at 471)); *McDonald v. New Mexico Parole Bd.*, 955 F.2d 631, 633 (10th Cir. 1991))(A probationer "is not entitled to a probation-violation hearing until he is taken into custody pursuant to the probation-violation warrant," and need not be accorded a revocation hearing prior to completion of an intervening sentence.); *United States v. Gomez-Diaz*, 415 Fed.Appx. 890, 895 (10th Cir. 2011)(unpublished) [3] ("[A]ny pending grounds for revocation of supervised release on which the detainer was issued may await completion of Mr. Gomez-Diaz's state sentence without violating his constitutional rights," (citing see *Moody*, 429 U.S. at 88-89); and he "is not entitled to a revocation hearing until after he is taken into federal custody on the arrest warrant" *(citing* see *McDonald*,

---

disagreed and held that it was the "execution" of the revocation warrant rather than the "issuance" which invokes the due process time requirements for the revocation hearings. It summarized its ruling as follows:

> (1) the Morrissey decision requires that a revocation hearing be held within a reasonable time after the parolee is taken into custody; (2) a parolee is not "taken into custody" until the revocation warrant has been executed; (3) Morrissey does not require that a revocation warrant be executed immediately after it has been issued; and (4) incarceration in a state institution is a good reason for delay in the execution of a warrant.

*Id.* at 302.

[3]   Unpublished opinions are cited herein for persuasive reasoning and not as binding precedent. See Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

955 F.2d at 631).[4] The holding of the Tenth Circuit was approved by the United States Supreme Court in *Moody v. Daggett*, 429 U.S. at 86. There, the Supreme Court expressly held that a parole violator serving an intervening sentence is not entitled to an immediate revocation hearing and that such hearing may be deferred to the expiration of the parolee's intervening sentence. The Court reasoned that loss of liberty occurs only upon execution of the warrant. *Id.*

In this case, Mr. Herny is serving an intervening federal prison term and is not held "in custody" under the state detainers. The state detainers are based upon probation violator warrants, rather than untried charges. Under the clear legal authority cited above, he does not have a right to a revocation hearing until he is taken into state custody. *Gomez-Diaz*, 415 Fed.Appx. at 894. He may raise any challenges to the violator warrants and potential revocations once he is in state custody. Until Mr. Herny is "taken into custody by the (Kansas) authorities," he "has not been deprived of a liberty interest by (Kansas) state action, and is not entitled to the due

---

[4] Petitioner does not allege that he sought resolution of the detainers under the Interstate Agreement of Detainers (IAD), and relief under that Act is unavailable. The IAD, which gives prisoner incarcerated in one jurisdiction the right to demand speedy disposition of "any untried indictment, information or complaint" that is the basis of a detainer lodged against him by another jurisdiction, does not apply to detainers based on probation-violation charges. *Carchman*, 473 U.S. at 725-26. Generally, this is because the IAD, "by its terms, only applies to detainers based upon outstanding criminal charges, i.e., an untried indictment, information, or complaint, and, therefore, is not applicable to petitioner's probation violator detainer." *Baird v. Caroche*, 171 Fed.Appx. 260, 260-61 (10th Cir. 2006)(unpublished). The Supreme Court explained in *Carchman*, 473 U.S. at 725-26: "Although the probation-violation charge might be based on the commission of a criminal offense, it does not result in the probationer's being 'prosecuted' or 'brought to trial' for that offense. . . ." *Id.*

5

process safeguards set forth in *Morrissey*." *McDonald*, 955 F.2d at 633-34. The court concludes that Mr. Herny's claim that his due process rights are being violated by the failure to hold hearings on his Kansas detainers is without any factual or legal support and is frivolous. *Gomez-Diaz*, 415 Fed.Appx. at 895; *Baird v. Caroche*, 171 Fed.Appx. 260, 260-61 (10th Cir. 2006)(unpublished).

Petitioner's complaints that the detainers are having adverse effects upon his present conditions of confinement likewise present no grounds for relief. This due process argument was addressed in *Moody v. Daggett*, 429 U.S. 78, where the defendant alleged that "the pending warrant and detainer adversely affect his prison classification and qualification for institutional programs." *Id.* at 88 n. 9. In *Moody*, the Supreme Court expressly ruled that a liberty interest did not arise because of possible adverse impact of a parole violator detainer on a prisoner's classification or eligibility for various rehabilitation programs. *Id.* at 88 FN 9. The Court specifically applied its holding in *Meachum v. Fano*[5] to "prisoner classification and eligibility for rehabilitative programs in the federal system" and held that no due process protections were required, even where a "grievous loss" results to the inmate. *Id.* It has also repeatedly been held in this Circuit

---

[5] The Supreme Court held in *Meachum* that an inmate has no constitutional right to a particular classification or to confinement in a particular correctional institution, even when the inmate has been transferred to a prison with "substantially more burdensome conditions that [sic] he had been experiencing." *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976).

that "[t]he mere fact that the presence of the state detainer may affect the present conditions of petitioner's confinement does not entitle him to relief."  See e.g., *Carson v. Executive Director, Department of Parole*, 292 F.2d 468 (10th Cir. 1961); *Romero*, 511 F.3d at 1284 (Rejecting Romero's argument that "because the detainer warrant has not been executed" he was "prejudiced because he cannot participate in treatment and other prison programming."); *Baird*, 171 Fed.Appx. at 261; *McDonald*, 955 F.2d at 634 (Even if petitioner's contention "that because of the unexecuted detainer warrant, he is being prejudiced in his ability to take advantage of various educational and rehabilitative programs offered by the incarcerating institution" were well grounded, . . . the Supreme Court has rejected the concept that these kinds of adverse consequences of state action trigger a due process concern.")(citing *Moody*, 429 U.S. at 88 n. 9); *Sable v. Ohio*, 439 F.Supp. 905, 906 (W.D. Okla. 1977); *Harness v. Day*, 428 F.Supp. 18 (D.C. Okla. 1976)(Federal prisoner against whom state parole violator detainer had been lodged was not entitled to immediate parole revocation hearing, even if presence of state detainer adversely affected his conditions of confinement.).  In *Romero*, the Tenth Circuit explained that "[e]ven assuming there are some collateral adverse consequences, we have 'rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right.'"  *Romero*, 511 F.3d at 1284-85 (citing *Moody*, 429 U.S. at 88, n. 9.).  Thus, even

7

if petitioner actually showed, rather than baldly alleged, that the Kansas detainers are causing adverse effects upon his classification or qualification for programs, no claim would be stated. Furthermore, prison officials have full discretion to control conditions of confinement and may reasonably determine, based on experience and expertise, that prisoners with detainers warrant more restrictive treatment.

It has also reasonably been held that a claim based upon conditions of confinement is not cognizable under 28 U.S.C. § 2241. As the Tenth Circuit recently explained in *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012)(citing 28 U.S.C. § 2241(c)(3)).

> Habeas corpus review is available under § 2241 if an individual is "in custody in violation of the Constitution or laws or treaties of the United States." The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the "traditional function of the writ is to secure release from illegal custody." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997)(quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). "Though the Supreme Court has not set the precise boundaries of habeas actions, it has distinguished between habeas actions and those challenging conditions of confinement. . . ." *Rael v. Williams*, 223 F.3d 1153, 1154 (10th Cir. 2000). This court has "endorsed this distinction." *Id.* In this circuit, a prisoner who challenges the fact or duration of his confinement and seeks immediate release or a shortened period of confinement, must do so through an application for habeas corpus. *McIntosh*, 115 F.3d at 812. In contrast, a prisoner who challenges the conditions of his confinement must do so through a civil rights action. *Id.*; (other citation omitted).

Thus, petitioner's allegations that the Kansas detainers are obstructing his rehabilitative programs in the federal prison in

8

Virginia do not amount to a factual or legal basis for federal habeas corpus relief.

In order to state a claim under § 2241, petitioner would have to challenge the fact or duration of his current confinement in Virginia, which is for federal crimes; and such a claim must be filed in the federal judicial district in which his current custodian is located. Petitioner also claims to seek relief under § 2254, which is a habeas corpus action challenging state, rather than federal, custody. However, as noted any challenge by Mr. Herny to the underlying Kansas violator warrants or the state probation process is premature. Moreover, when a prisoner challenges a detainer lodged by a State, federal habeas review is available only after the petitioner has exhausted all remedies available in the courts of that State. Generally, the petitioner must demonstrate that the exhaustion prerequisite has been satisfied. See *Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992)("A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.").

For all the foregoing reasons, the court finds that petitioner fails to state a claim for relief under either § 2241 or § 2254, and has not shown exhaustion of state court remedies.

**IT IS THEREFORE ORDERED** that petitioner is given thirty (30) days in which to satisfy the filing fee and to show cause why this action should not be dismissed for the reasons stated herein.

The clerk is directed to send petitioner IFP forms.

**IT IS SO ORDERED.**

**DATED:  This 16th day of August, 2013, at Topeka, Kansas.**

                                      <u>s/RICHARD D. ROGERS</u>
                                      **United States District Judge**